UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIE FRED JACKSON, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No.: 2:13-CV-00345-MHH |
| CAROLYN W. COLVIN ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), plaintiff Willie Fred Jackson seeks judicial review of a final adverse decision of the Commissioner of Social Security affirming the decision of the Administrative Law Judge ("ALJ"), who denied Mr. Jackson's claim for a period of disability and disability insurance benefits and his claim for supplemental security income  (Doc. 1).  As discussed below, the Court finds that substantial evidence supports the ALJ's decision.  Therefore, the Court affirms the Commissioner's decision.

**<u>STANDARD OF REVIEW</u>**:

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close

scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**PROCEDURAL AND FACTUAL BACKGROUND:**

Mr. Jackson filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on May 26, 2010. (Doc. 8-6, pp. 134-37; pp. 138-41). The Commissioner

initially denied these claims, and Mr. Jackson requested a hearing before an ALJ. (Doc. 8-3, p. 96). An ALJ conducted a hearing on November 21, 2011. (Doc. 8-3, p. 35).

Mr. Jackson was 49 years old and had a high school education at the time of the administrative hearing. (Doc. 8-3, p. 40). He had past work experience as a construction worker, manhole inspector/repairer and working foreman for manhole repair. (Doc. 8-3, p. 30). Mr. Jackson alleged that he became disabled on April 27, 2010 because of a neck injury, a back injury, and a spinal injury. (Doc. 8-3, p. 40). He testified that his average daily pain level was a seven or eight on a zero-to-ten scale. (Doc. 8-3, p. 51).

On February 23, 2012, the ALJ issued a decision concluding that Mr. Jackson was not disabled within the meaning of the Social Security Act. (Doc. 8-3, p. 31). He found that Mr. Jackson met the insured status requirements of the Act and had not engaged any gainful activity since the alleged onset date. (Doc. 8-3, p. 23). The ALJ determined that Mr. Jackson suffered from the following severe impairments: cervical disk herniation at C5/6 status post anterior cervical discectomy and fusion with bone graft, mild degenerative disc disease/osteoarthritis of the lumbar spine, and hypertension. (Doc. 8-3, p. 23). However, he concluded that these impairments, individually or in combination, did

not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. 8-3, p. 24).

Next, the ALJ determined that Mr. Jackson retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that Mr. Jackson must avoid concentrated exposures to heat, cold and vibration; Mr. Jackson cannot work with hazardous machinery or unprotected heights; Mr. Jackson can only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; Mr. Jackson cannot reach overhead with the bilateral upper extremities; and Mr. Jackson can only occasionally push or pull with the bilateral upper extremities.  (Doc. 8-3, p. 25).

In making this finding, the ALJ considered Mr. Jackson's testimony. However, he found Mr. Jackson's testimony, to the extent that it differed from the RFC assessment, was not credible.  (Doc. 8-3, p. 29).  The ALJ reasoned that Mr. Jackson's inconsistent and conservative treatment, Mr. Jackson's daily activities, and the objective medical evidence supported the RFC finding.  (Doc. 8-3, pp. 28-29).  Additionally, the ALJ relied on reports from Mr. Jackson's medical records; from his chiropractor, consultative medical examiner Dr. Rodolfo Veluz; and from non-examining state agency consultant Dr. Robert Heilpern.   (Doc. 8-3, p. 29).

Based on the RFC determination, the ALJ found that Mr. Jackson is unable to perform his past work, but jobs exist in the national economy and in Alabama in

significant numbers that Mr. Jackson can perform.  (Doc. 8-3, p. 30).  The ALJ relied on the testimony from the vocational expert ("VE") that Mr. Jackson can work as an assembler, sealer, or bench worker.  (Doc. 8-3, p. 31).  For these reasons, the ALJ concluded that Mr. Jackson is not disabled under the Social Security Act.

On December 22, 2012, the Appeals Council declined Mr. Jackson's request for review of the ALJ's decision.  (Doc. 8-3, pp. 1-6).  Having exhausted all administrative remedies, Mr. Jackson filed this action for judicial review pursuant to §205(g) and §1631(c)(3) of the Social Security Act.  See 42 U.S.C. §405(g) and §1383(c)(3).

**ANALYSIS**:

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A).  A claimant "bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted). "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments." *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Mr. Jackson argues that he is entitled to relief from the ALJ's decision because the ALJ: (1) erred by mechanically applying the Medical Vocational Guidelines; (2) failed to adequately consider the opinion of examining physician, Dr. Veloz; and (3) improperly applied the pain standard. (Doc. 12, p. 5). The Court finds that these contentions lack merit.

**I. Medical Vocational Guidelines**

Mr. Jackson argues that the ALJ erred in applying the Medical Vocational Guidelines.[1]  The regulations provide that an ALJ should not mechanically apply the grids "[i]f [a claimant is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled."  20 C.F.R. § 404.1563(b).

To be considered in the higher age category, the claimant must "proffer[] substantial credible evidence that his ability to adapt is less than the level established under the grids for persons his age." *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984).  If the claimant presents such evidence, then "the district court is required to remand the case to the [Commissioner]." *Patterson v. Bowen*, 799 F.2d 1455, 1458-59 (11th Cir. 1986) (citing *Reeves*, 734 F.2d at 525).  Without "such a proffer, the ALJ's mechanistic use of the age grids would be harmless error and there would be no need to remand to the [Commissioner]." *Id*.

Because he turned fifty years old within four months of the date of the ALJ's decision, Mr. Jackson argues that the ALJ should have rated him as an

---

[1] "Social Security regulations currently contain a special section called the Medical Vocational Guidelines. 20 C.F.R. pt. 404 subpt. P, app. 2. The Medical Vocational Guidelines ("grids") provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments. The grids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience." *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004)

"individual[] approaching advanced age." 20 C.F.R. Part 404 Subpart P, Appendix 2. Mr. Jackson adds that if the ALJ also found that he (Mr. Jackson) did not have transferable skills,[2] then he would be disabled under the grids. 20 C.F.R. Part 404 Subpart P, Appendix 2. This argument fails for two reasons.

First, the ALJ did not apply the grids. In fact, he specifically declined to apply the grids because "the claimant's ability to perform all or substantially all of the requirements of this level [sedentary] of work has been impeded by additional limitations." (Doc. 8-3, p. 30). Instead, the ALJ sought and relied on the testimony of a VE to determine whether Mr. Jackson could perform other work. (Doc. 8-3, p. 30; Doc. 8-3, p. 65). In similar circumstances, the Eleventh Circuit stated:

> [T]he treatment of [the claimant] as either a person of advanced age or closely approaching advanced age under the grids is essentially theoretical because the ALJ did not rely exclusively on the grids in making the disability determination. … At step five of the sequential evaluation process, the ALJ determined that, although the grids would ordinarily support a finding of "not disabled" in [the claimant's] case, the ALJ needed to utilize the VE's testimony to establish whether a significant number of jobs existed for [the claimant] in the national economy because [his] ability to perform all or substantially all of the requirements of light work was impeded by his exertional and nonexertional limitations. [The claimant] does not challenge the ALJ's factual findings with regard to his RFC or the conclusion that he could not perform a full range of light work. Given the VE's testimony that there existed three types of jobs in significant numbers in the national

---

[2] The ALJ found "[t]ransferability of job skill [wa]s not material to the determination of disability." (Doc. 8-3, p. 30).

> economy that a person with [the claimant's] RFC could perform, substantial evidence supports the ALJ's conclusion …. As such, the ALJ's decision was not made in reliance upon the grids and, thus, a determination of whether [the claimant] was a person of advanced age or closely approaching advanced age was not necessary.

*Miller v. Comm'r of Soc. Sec.*, 241 Fed. Appx. 631, 635 (11th Cir. 2007). Similarly, the ALJ in the present case did not rely on the grids, and the age determination was unnecessary.

Even if the ALJ had relied exclusively on the grids, Mr. Jackson did not demonstrate that the ALJ should have considered him in a higher age category. The evidence proffered by a claimant must "relate to the question of whether h[is] ability to adapt is less than that established by the grids for persons h[is] age." *Patterson*, 799 F.2d at 1459 (holding evidence relating to educational experience and the claimant's RFC were not related). Applying this rule, the court in *Miller* found that evidence that the claimant "was only two months short of turning 55 at the time of the hearing and the ALJ's decision," without more, was insufficient to prompt a revised age classification. 241 Fed. Appx. at 636. Likewise, Mr. Jackson argues that the ALJ should have deemed him a person approaching advanced age because he established that he would turn 50 four months after the date of the decision. That is not enough. "Thus, to the extent that the ALJ relied exclusively on the grids, the ALJ's . . . use of the age grids was harmless error." *Id*.

## II. Consideration of Examining Physician's Opinion

Mr. Jackson argues that the ALJ erred by not adopting as part of the RFC finding Dr. Veluz's opinion that Mr. Jackson is unable squat and has a severely restricted range of motion in his neck. Mr. Jackson contends that Dr. Veluz's findings contradict the ALJ's conclusion that Mr. Jackson could occasionally balance, stoop, kneel, crouch and crawl. "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

Mr. Jackson cites *Markell v. Astrue*, 2007 WL 4482245 (M.D. Fla. Dec. 19, 2007), in support of his argument that the ALJ failed to give proper weight to Dr. Veluz's opinion.[3] In *Markell*, the District Court for the Middle District of Florida explained that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* (quoting SSR 96-8p, 1996 WL 374184, *7 (S.S.A.)). The court reasoned that "the medical record indicates that the ALJ gave great weight to the assessment by two nonexamining, reviewing doctors who concluded [the claimant] could perform

---

[3] Mr. Jackson also cites *Lambert v. Astrue* for this proposition; however, the *Lambert* court held "[a]lthough the ALJ referenced this report …, he failed to state what evidentiary weight he was giving it." 2008 WL 280848, *2 (S.D. Ala. Jan. 31, 2008). As discussed below, the ALJ specifically stated the weight given to Dr. Veluz's findings. *See* (Doc 8-3, p. 29).

10

light exertional work and otherwise ignored the assessment by [the examining physician] to the contrary." *Id*. at *4. Thus, the court determined that the ALJ erred "in not expressly addressing the conclusions of [the examining physician]." *Id*.

Procedurally, district court opinions are persuasive authority, not binding authority. Additionally, "Social Security Rulings are not binding on this Court." *Peeler v. Astrue*, 400 Fed. Appx. 492, 496 n.6 (11th Cir. 2010) (citing *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Unit B Apr. 1981)). However, applying the *Markell* court's reasoning, the ALJ did not err in his evaluation of Dr. Veluz's opinion. At the July 2010 consultative examination, Dr. Veluz stated "[t]he patient was unable to squat, heel or toe stand or walk and tandem gait because of pain." (Doc 8-9, p. 26). Dr. Veluz also found that Mr. Jackson "had significant limitation of the cervical disk." (Doc 8-9, p. 27). The ALJ recounted both of these findings in his decision. (Doc. 8-3, p. 28).

The ALJ also reported that Mr. Jackson had stated that he "had difficulty getting up after squatting or bending." (Doc. 8-3, p. 27; Doc. 8-7, p. 31). On August 11, 2010, reviewing physician Dr. Heilpern opined that Mr. Jackson could occasionally balance, stoop, kneel, crouch and crawl. (Doc. 8-3, p. 28; Doc. 8-9, p. 32). The ALJ noted that May 2011 medical records indicate that Mr. Jackson "had good range of motion of the neck[] and limited flexion of the lumbosacral spine."

(Doc. 8-3, p. 28; Doc. 8-9, p. 42). In September 2011, Dr. Thomas Broughton opined that Mr. Jackson "appeared to be in mild distress, with lower back tenderness, normal range of motion, and paravertebral tenderness." (Doc. 8-3, p. 28; Doc. 8-9, p. 51).

Based on this evidence, the ALJ gave "[c]onsiderable weight … to [Dr. Veluz's] clinical findings, which are not inconsistent with a sedentary residual functional capacity." (Doc. 8-3, p. 29). Thus, the ALJ offered sufficient reasons for his finding that Mr. Jackson could occasionally balance, stoop, kneel, crouch and crawl. See *Smith v. Astrue*, 2011 WL 843969, *10 (M.D. Fla. Feb. 18, 2011) *report and recommendation adopted sub nom. Smith v. Comm'r of Soc. Sec.*, 2011 WL 843544 (M.D. Fla. Mar. 8, 2011) ("Here, the ALJ does not completely ignore medical evidence contrary to her conclusions, nor does she fail to expressly articulate the reasons why such medical evidence was not adopted. Contrary to the Plaintiff's allegations, the ALJ both referenced and articulated reasons for discounting contrary medical evidence."); *see also Ogletree v. Colvin*, 2013 WL 6169161, *2 (M.D. Ga. Nov. 25, 2013) ("In *Markell,* the court reversed the Commissioner's denial of benefits because the ALJ did not explain either the weight accorded to a consulting physician's opinion or the reason for according it that weight."). Here, the ALJ cited multiple pieces of evidence that support his

RFC finding and his decision not to adopt all of Dr. Veluz's opinions. Substantial evidence supports these findings.

In any case, any error by the ALJ in his evaluation of the Dr. Veluz's opinion about Mr. Jackson's ability to squat would be harmless. The jobs listed by the VE do not require the claimant to balance, stoop, kneel, crouch or crawl. *See* DOT Listing No. 734.687-018 *available at* DICOT § 734.687-018 (categorizing these activities as "Not Present - Activity or condition does not exist"); DOT Listing No. 559.687-014 *available at* DICOT § 559.687-014 (same); DOT Listing No. 739.687-182 *available at* DICOT § 739.687-182 (same). Thus, even if the ALJ erred, the error would not require reversal of the Commissioner's decision. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

Mr. Jackson also contends that the ALJ erred in his evaluation of Dr. Veluz's opinion because the ALJ ignored a May 2010 MRI of the lumbar spine. At the hearing, the ALJ stated "I'm really kind of trying to figure out where the consultative examination got an indication that there was perhaps a more severe pathology [disk herniation at L5, S1] in the lumbar spine than would otherwise be suggested based on the radiological evidence at [Doc. 8-9, pp. 49-62]." (Doc. 8-3,

p. 46). The ALJ and the attorney did not locate the May MRI at the hearing; however, the ALJ did note and summarize the May 2010 MRI of the lumbar spine in his written decision. He stated "[i]maging of the lumbar spine revealed a disc herniation at L5-S1 on the right, which appeared to slightly efface the right S1 nerve root." (Doc. 8-3, p. 27). This statement mirrors the May 2010 MRI and Dr. Veluz's report. (Doc. 8-9, pp. 22, 25). The ALJ also took into account Dr. Heilpern's report, which noted the MRI. (Doc. 8-9, p. 31). The ALJ properly considered the May 2010 MRI of the lumbar spine in his evaluation of Dr. Veluz's opinion.

## III. Pain Standard

Finally, Mr. Jackson argues that the ALJ's mischaracterization of his lumbar spine problems demonstrates that the ALJ could not have properly applied the pain standard. "[T]o show a disability based on subjective pain testimony, 'the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise' to the claimed symptoms." *Powell v. Comm'r of Soc. Sec.*, 2014 WL 3377650, at * 1, --- Fed. Appx. ---- (July 11, 2014) (quoting *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002)). A claimant's testimony coupled with evidence that meets this standard "is itself

sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). "If the Secretary refuses to credit such testimony, he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

In the present case, the ALJ properly applied the pain standard. He found that Mr. Jackson's medical condition met the pain standard, but Mr. Jackson's testimony was not credible. The ALJ then articulated "explicit and adequate reasons" for declining to find that Mr. Jackson is disabled. *Hale*, 831 F.2d at 1011. As explained in detail above, the ALJ properly considered Mr. Jackson's May 2010 MRI of the lumbar spine. Consequently, Mr. Jackson's arguments that the ALJ "ignor[ed] uncontroverted objective medical evidence" and failed to analyze his testimony "with the far more severe results of the lumbar MRI" are not persuasive. (Doc. 12, p. 12). Furthermore, substantial evidence supports the ALJ's decision to discredit Mr. Jackson's testimony. The ALJ found:

> The claimant essentially alleges that he is unable to work due to the severity of his chronic pain. However, he has not had consistent treatment over the past year, and between 2010 and 2011 went 11 months without treatment. The claimant's spinal deficits, while significant, do not support his alleged degree of disability. The claimant's alleged limitations of the neck are supported by prior surgery, but his treatment notes indicate he had good results from his surgery. While there is evidence of a more recent disc herniation at C6-7, there is no evidence of any acute compromise of the spinal cord or nerve root compression. The radiological evidence supports no more tha[n] mild lumbar degenerative joint disease or degenerative disc disease, with no evidence of any acute compromise of the spinal

> cord or nerve root compression. There is nothing in the claimant's rehabilitation notes at [(Doc. 8-8, pp. 206-55)], the orthopedic consultative examiner's findings at [(Doc. 8-9, pp. 304-10)], or in the claimant's treating physician notes at [(Doc. 8-9, pp. 302-03, pp. 319-29 or pp. 330-43)] that would preclude the performance of sedentary work. Further, the claimant's reported activities of daily living, including work in the yard, his functional abilities reported to Disability Determination Services in [(Doc. 8-7, pp. 177-86)], and reported moderate pain levels with conservative treatment, are all indicate [sic] he can sustain sedentary work.

(Doc. 8-3, pp. 28-29).

Mr. Jackson argues that the analysis would have changed if the ALJ had found that he suffered from disk herniation of the lumbar spine rather than from mild degenerative disc disease of the lumbar spine. (Doc. 12, p. 13).[4] However, substantial evidence supports the finding that Mr. Jackson suffered only from mild degenerative disc disease. In May 2011, "[d]iagnostic imagining of the claimant's lumbar spine revealed mild degenerative changes without further significant findings." (Doc. 8-3, p. 28; Doc. 8-9, p. 47). In September 2011, another diagnostic image report indicated mild degenerative changes and "no structural defects." (Doc. 8-9, p. 57). The ALJ noted both of these reports in his decision. (Doc. 8-3, p. 28). Therefore, substantial evidence supports the ALJ's determination that the claimant suffered from mild degenerative disc disease of the

---

[4] This argument is perplexing, given that the ALJ already found that Mr. Jackson's condition could reasonably cause the alleged symptoms. (Doc. 8-3, p. 28). The limited credibility given to Mr. Jackson's testimony did not turn on the absence of a herniated disk.

lumar spine.[5] The ALJ applied the pain standard using the correct legal standards, and his decision to discredit Mr. Jackson's testimony was based on substantial evidence.

**CONCLUSION**:

For the reasons outlined above, the Court concludes that the ALJ's decision is based upon substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the decision of the Commissioner should be affirmed. The Court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 25, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[5] "Because a herniated disk desiccates and shrinks over time, symptoms tend to abate regardless of treatment. Up to 85% of patients with back pain—regardless of cause—recover without surgery within 6 [weeks]." The Merck Manual of Diagnosis and Therapy, *Herniated Nucleus Pulposus*, *available at* http://www.merckmanuals.com/professional/neurologic_disorders/peripheral_nervous_system_and_motor_unit_disorders/herniated_nucleus_pulposus.html (last visited February 13, 2014).